**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **JOY BETH L.,**[1] | ) |
| | ) |
| **Plaintiff,** | ) |
| | )      **CIVIL ACTION** |
| **v.** | ) |
| | )      **No. 21-1196-JWL** |
| **KILOLO KIJAKAZI,**[2] | ) |
| **Acting Commissioner of Social Security,** | ) |
| | ) |
| **Defendant.** | ) |
| _____ | ) |

**MEMORANDUM AND ORDER**

Plaintiff seeks review of a decision of the Commissioner of Social Security denying Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits pursuant to sections 216(i), 223, 1602, and 1614, Title II and Title XVI, respectively, of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381a, and 1382c (hereinafter the Act).  Finding no error in the Administrative Law Judge's (ALJ) decision, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

---

[1] The court makes all its "Memorandum and Order[s]" available online.  Therefore, in the interest of protecting the privacy interests of Social Security disability claimants, it has determined to caption such opinions using only the initial of the Plaintiff's last name.

[2] On July 9, 2021, Kilolo Kijakazi was sworn in as Acting Commissioner of Social Security.  In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Ms. Kijakazi is substituted for Commissioner Andrew M. Saul as the defendant.  In accordance with the last sentence of 42 U.S.C. § 405(g), no further action is necessary.

## I.      Background

Plaintiff protectively filed applications for DIB and SSI benefits on September 13, 2018, and May 15, 2019, respectively.  (R. 10, 293, 297).  After exhausting administrative remedies before the Social Security Administration (SSA), Plaintiff filed this case seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g).  Plaintiff claims substantial evidence does not support the ALJ's evaluation of her allegations of symptoms resulting from her knee pain.  (Pl. Br. 8).

The court's review is guided by the Act.  Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009).  Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether she applied the correct legal standard.  Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).  "Substantial evidence" refers to the weight, not the amount, of the evidence.  It requires more than a scintilla, but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).  Consequently, to overturn an agency's finding of fact the court "must find that the evidence not only supports [a contrary] conclusion, but compels it."  I.N.S. v. Elias-Zacarias, 502 U.S. 478, 481, n.1 (1992) (emphases in original).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005); see also, Bowling v. Shalala, 36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988) (brackets in Bowling)).  Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability.  20 C.F.R. §§ 404.1520, 416.920; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Williams, 844 F.2d at 750-51.  After evaluating step three, the

3

Commissioner assesses claimant's residual functional capacity (RFC).  20 C.F.R. §§ 404.1520(e), 416.920(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the process—determining at step four whether, considering the RFC assessed, claimant can perform her past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, she is able to perform other work in the economy. Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work.  Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.  At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC previously assessed.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).  The court addresses the error alleged in Plaintiff's Social Security Brief.

## II.   Discussion

Plaintiff argues, "The ALJ's decision in this case is deficient for the same reasons the courts identified in" Kellams v. Berryhill, 696 F. App'x. 909 (10th Cir. 2017); Andria N.C. v. Saul, Civ. A. No. 20-1163-JWL, 2021 WL 2222681 (D. Kan. June 2, 2021); Flanery v. Saul, Civ. A. No. 19-1062-KHV, 2019 WL 6492632 (D. Kan. Dec. 3, 2019): and T.A.B. v. Comm'r. of SSA, No.19-1021-SAC, 2019 WL 3532067 (D. Kan. Aug. 2, 2019).  (Pl. Br. 11).  This is so, in Plaintiff's view, for three reasons.  First, the fact there is no evidence Plaintiff "required an assistive device does not diminish her allegations of

disabling knee pain" in that "[t]he Tenth Circuit has stated '[t]he absence of evidence is not evidence,'" and the ALJ did not explain why use of an assistive device might demonstrate greater pain.  (Pl. Br. 11) (quoting Kellams, 696 F App'x. at 915).

"Second, the ALJ failed to explain why the MRI evidence of osteonecrosis, abnormal physical examination findings, and periodic abnormal gait were inconsistent with [Plaintiff]'s allegations of disabling knee pain."  Id.  She argues the record contained evidence tending to support Plaintiff's allegations and although "the ALJ did not have to find that these abnormalities resulted in the pain level [Plaintiff] alleged, … she had a duty to provide some rationale to explain why this evidence, … did not align with [Plaintiff's] allegations of disabling pain.  Instead, the ALJ provided a conclusion in the guise of findings, which is improper."  Id. at 11-12 (citing Jamie N. v. Saul, Civ. A. No. 20-1164-JWL, 2021 WL 2454427 at *2, *4-6 (D. Kan. June 16, 2021).  She argues her osteonecrosis could result in disabling pain and "the ALJ cited no meaningful evidence that undermined [Plaintiff]'s testimony."  Id. 12-13.

Third, she argues, "Dr. Old's statements throughout the record also support [Plaintiff]'s allegations of disabling pain."  Id. 13.  She argues that 20 C.F.R. §§ 404.1520c and 416.920c require the ALJ to "consider and weigh," and "evaluate the persuasiveness of all medical opinions and prior administrative findings," considering the factors of: (i) supportability, (ii) consistency, (iii) relationship with the claimant, (iv) specialization, and (v) other factors that tend to support or contradict the opinion or prior administrative finding.  Id. at 13-14.  She argues, "the ALJ did not cite any evidence to support her position that Dr. Old relied 'entirely on subjective report[s],'" noting that

5

such a finding must rest upon "a legal or evidentiary basis from the record." (Pl. Br. 14)

(quoting without citation R. 19) (and citing <u>Langley v. Barnhart</u>, 373 F.3d 1116, 1121

(10th Cir. 2004); and <u>Victory v. Barnhart</u>, 121 F. App'x. 819, 823–24 (10th Cir. 2005)).

She continues, "substantial evidence does not support the ALJ's claim that Dr. Old's

statements are not supported by or consistent with the record." <u>Id.</u> 15. She argues, "the

ALJ's unsupported claims do not constitute a good reason to disagree with Dr. Old's

statements." <u>Id.</u> Finally, she concludes:

> the ALJ did not cite any meaningful evidence contradicting [Plaintiff]'s
> disabling knee pain allegations. Similarly, she did not cite any evidence
> that undermined Dr. Old's statements supporting [Plaintiff]'s position that
> she suffered severe, debilitating pain in her knees. The lack of specific
> reasons for her conclusions violated SSR 16-3p and circuit precedent.

<u>Id.</u> at 17.

The Commissioner argues the ALJ properly evaluated Plaintiff's allegations of

symptoms in accordance with <u>Social Security Ruling</u> (SSR) 16-3p and 20 C.F.R.

§ 405.1529 and the court should defer to the ALJ's evaluation. She argues, "Plaintiff

essentially asks the Court [sic] to reweigh the evidence in her favor, which the Court [sic]

may not do under substantial evidence review." (Comm'r Br. 8) (citing <u>Lax</u>, 489 F.3d at

1084). She continues, "Though [Plaintiff] couches her argument in terms of insufficient

articulation by the ALJ, the crux of Plaintiff's argument is that her subjective complaints

of disabling pain were supported by substantial evidence and that the ALJ failed to prove

otherwise." <u>Id.</u> (citations omitted). The Commissioner provides four contrary

arguments. First, she argues Plaintiff's argument exalts form over substance since

technical perfection in writing is not required and the ALJ's rationale can be discerned

from the decision.  Id. (citing Bowen v. Yuckert, 482 U.S. 137, 157 (1987) (O'Connor, J.,

concurring).  Second, she contends Plaintiff's argument switches the burden of proof

from herself to the Commissioner.  (Comm'r Br. 9).  Third, she argues the ALJ did not

reject Plaintiff's allegations of knee pain but "agreed that Plaintiff's knee pain

significantly limited her functioning and assessed multiple work restrictions as a result

(which would eliminate all but sedentary jobs)."  Id. (emphasis in original).  She

concludes, "Fourth, the question before the Court [sic] is not whether there is substantial

evidence supporting Plaintiff's allegations of disabling pain, but whether the

administrative record "contains 'sufficien[t] evidence' to support the agency's factual

determinations.'"  Id. (quoting Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019))

(emphasis in Biestek).

The Commissioner acknowledges an ALJ is required to provide ""specific reasons

for the weight given to the individual's symptoms, be consistent with and supported by

the evidence, and be clearly articulated so the individual and any subsequent reviewer can

assess how the adjudicator evaluated the individual's symptoms."  Id. (quoting SSR 16-

3p, 2017 WL 5180304 at *10).  She argues the ALJ's "rationale was articulated

sufficiently that the Court [sic] can track her reasoning."  Id. at 10.  She points to the

ALJ's analysis of Plaintiff's allegations and argues it is supported by the record evidence.

Id. at 10-12.

She argues that the ALJ properly addressed the medical opinions and prior

administrative medical findings, which both supported and detracted from Plaintiff's

allegations of disabling symptoms and resolved the conflicts between the opinions as is

her duty.  She argues substantial record evidence supports the ALJ's resolution.  Id. 13-

16.  The Commissioner concludes that even though the record evidence is equivocal,

substantial evidence supports the ALJ's decision and in such a case it is irrelevant that the

court might find substantial evidence supporting Plaintiff's argument.  (Comm'r Br. 16-

17) (citing Allman v. Colvin, 813 F.3d 1326, 1333 (10th Cir. 2016) ("In short, the record

contains support for both the notion that Mr. Allman has extreme deficiencies in

concentration, persistence, and pace, and the notion that his mental limitations are not

that severe.  The ALJ was entitled to resolve such evidentiary conflicts and did so."

(citation omitted)); and Lax, 489 F.3d at 1084) ("The possibility of drawing two

inconsistent conclusions from the evidence does not prevent an administrative agency's

findings from being supported by substantial evidence.").

    In her Reply Brief Plaintiff argues she "is not requesting a remand based on

decision writing imperfections" but on failure to provide clearly articulated reasons for

discounting her allegations of symptoms as required by SSR 16-3p and explained in her

Brief.  (Reply 1-2).  She argues the ALJ "did not explain why she believed the evidence

… was inconsistent with [Plaintiff]'s allegations" and remand is required.  Id. at 2.

## A.    Standard for Evaluating a Claimant's Allegations of Symptoms

    The Tenth Circuit has explained the analysis for considering subjective allegations

regarding symptoms.  Thompson v. Sullivan, 987 F.2d 1482, 1488 (10th Cir. 1993)

(dealing specifically with pain).

> A claimant's subjective allegation of pain is not sufficient in itself to
> establish disability.  Before the ALJ need even consider any subjective
> evidence of pain, the claimant must first prove by objective medical

evidence the existence of a pain-producing impairment that could
reasonably be expected to produce the alleged disabling pain.  This court
has stated:  The framework for the proper analysis of Claimant's evidence
of pain is set out in <u>Luna v. Bowen</u>, 834 F.2d 161 (10th Cir. 1987).  We
must consider (1) whether Claimant established a pain-producing
impairment by objective medical evidence; (2) if so, whether there is a
"loose nexus" between the proven impairment and the Claimant's
subjective allegations of pain; and (3) if so, whether, considering all the
evidence, both objective and subjective, Claimant's pain is in fact
disabling.

<u>Thompson</u>, 987 F.2d at 1488(citations and quotation omitted).

In evaluating a claimant's allegations of symptoms, the court has recognized a

non-exhaustive list of factors which should be considered.  <u>Luna</u>, 834 F.2d at 165-66; <u>see</u>

<u>also</u> 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).  These factors include:

the levels of medication and their effectiveness, the extensiveness of the
attempts (medical or nonmedical) to obtain relief, the frequency of medical
contacts, the nature of daily activities, subjective measures of credibility
that are peculiarly within the judgment of the ALJ, the motivation of and
relationship between the claimant and other witnesses, and the consistency
or compatibility of nonmedical testimony with objective medical evidence.

<u>Kepler v. Chater</u>, 68 F.3d 387, 391 (10th Cir. 1995) (quoting <u>Thompson</u>, 987 F.2d at

1489).[3]

---

[3] <u>Luna</u>, <u>Thompson</u>, and <u>Kepler</u>, were decided when the term used to describe the
evaluation of a claimant's allegations of symptoms resulting from her impairments was
"credibility determination."  Although that term is no longer used, the applicable
regulation <u>never</u> used that term and the <u>procedure</u> for evaluating a claimant's allegations
of symptoms has not significantly changed.  <u>Revisions to Rules Regarding the Evaluation
of Medical Evidence</u>, 82 Fed. Reg. 5,844-01, 5,871 (Jan. 18, 2017) (codified at 20 C.F.R.
§ 404.1529).  Moreover, the Tenth Circuit held its approach to credibility determination
was consistent with the approach set forth in SSR 16-3p.  <u>Brownrigg v. Berryhill</u>, 688 F.
App'x. 542, 546 (10th Cir. 2017).  Therefore, the three-step framework set out in <u>Luna</u>,
based on 20 C.F.R. § 404.1529 (2017) is still the proper standard to be used as explained
in the regulations in effect on February 24, 2021, when this case was decided.
Nonetheless, to the extent that, and only to the extent that "subjective measures of

The Commissioner has promulgated regulations suggesting relevant factors to be considered in evaluating a claimant's allegations of symptoms which overlap and expand upon the factors stated by the court:  Daily activities; location, duration, frequency, and intensity of symptoms; factors precipitating and aggravating symptoms; type, dosage, effectiveness, and side effects of medications taken to relieve symptoms; treatment for symptoms; measures plaintiff has taken to relieve symptoms; and other factors concerning limitations or restrictions resulting from symptoms.  20 C.F.R. §§ 404.1529(c)(3)(i-vii), 416.929(c)(3)(i-vii).

### B.    The ALJ's Relevant Findings

The ALJ found Plaintiff has "osteonecrosis of bilateral knees" which is a "severe" impairment within the meaning of the Act and regulations.  (R. 12).  She found that Plaintiff's osteonecrosis does not meet or medically equal the severity of Listing 1.02, Major dysfunction of a joint, because the evidence does not demonstrate "an inability to ambulate effectively as is required under Listing 1.02, and as is defined in paragraph 1.00B2b."  Id. at 13.  She noted, "Examination findings vary from normal gait to forward-leaning and one instance of antalgic gait."  Id.

She assessed Plaintiff with the physical RFC:

> to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) with the following exceptions.  She can lift, carry, push and/or pull 20 pounds occasionally and 10 pounds frequently; can stand or walk in combination for 2 hours in an 8-hour workday with normal breaks; and can sit for 6 hours in an 8-hour workday with normal breaks.  She can

---

credibility that are peculiarly within the judgment of the ALJ;" Kepler, 68 F.3d at 391; relate to an examination of a claimant's character, it is specifically prohibited by SSR 16-3p, and is no longer a valid factor to be considered.

occasionally climb ramps and stairs, never climb ladders, ropes and
scaffolds, and can occasionally balance, stoop, and crouch but may not
kneel or crawl.  She should avoid more than occasional exposure to
extreme cold, vibration and hazards such as unprotected heights and
machinery with moving mechanical parts.

(R. 15) (finding no. 5, bold omitted).

The ALJ stated she had considered Plaintiff's symptoms in accordance with 20
C.F.R. §§ 404.1529 and 416.929 and SSR 16-3p and had considered the medical opinions
and prior administrative medical findings in accordance with 20 C.F.R. §§ 404.1520c and
416.920c.  Id.  She noted Plaintiff "alleged significant difficulties with standing, walking,
and lifting, due to her knees.  She reported a limited ability to complete household chores
and some personal hygiene tasks."  Id. at 16 (citing Ex. C2E, R. 315-22).  She found
Plaintiff's "statements concerning the intensity, persistence, and limiting effects of the[]
symptoms are not entirely consistent with the medical evidence and other evidence in the
record for the reasons explained in this decision."  Id.  She found them inconsistent with
the objective medical evidence "because the medical examination findings and imaging
reports do not support a complete inability to work at a substantial gainful activity level."
Id.

The ALJ explained her consideration of Plaintiff's osteonecrosis:

The claimant has osteonecrosis of her bilateral knees.  The claimant has
complained of pain, numbness, and tingling in her knees and lower
extremities, exacerbated by standing or sitting too long (testimony, see for
example Exhibits C6F at 3, C14F at 44).  MRI's in 2014, 2017, and
December 2018 confirmed multifocal osteonecrosis on the bilateral distal
femurs and proximal tibias; however, the degeneration has remained stable
since May 2014 (Exhibits C3F at 1, C14F at 44, 46).  Associated
examination findings include decreased range of motion, decreased motor
strength, and tenderness with palpation (Exhibits C4F at 9, C5F at 3, 15,

11

> C6F at 3, C9F at 3, 6, C19F at 10).  Reported exam findings regarding the
> claimant's gait have varied from antalgic to normal (Exhibits C4F at 7, C5F
> at 3, C6F at 3, C8F at 6, C18F at 9).  There is no indication of use of any
> assistive device such as a cane, crutch, or wheelchair.  Osteonecrosis
> reasonably limits the claimant to no more than 2 hours of walking and/or
> standing per 8-hour workday, no climbing of ladders, ropes, or scaffolds,
> no kneeling, no crawling, and no more than occasional balancing,
> crouching, and climbing of ramps or stairs.  This impairment also
> contributes to the claimant's lifting limitations, and need to avoid more than
> occasional exposure to extreme cold, vibration, and hazards.

(R. 16).

The ALJ found the prior administrative medical findings of the state agency

medical consultants persuasive because they are supported by the physicians'

explanations and "are consistent with the medical evidence of record, including imaging

reports confirming osteonecrosis, but also that the same has remained stable since 2014."

Id. at 18.  She went on to explain why she found greater limitations than did the state

agency physicians.  "Standing and walking was further reduced as evidence at the hearing

level showed a forward leaning gait, unsteady Romberg, and that she walked slowly and

hunched over.  She was also limited to no kneeling or crawling to avoid exacerbating the

lower extremity disorders."  Id. (citations omitted).

The ALJ found Dr. Old's opinions unpersuasive both in regard to mental and to

physical limitations.  She found Dr. Old's treatment notes regarding marked limitations in

basic mental functional areas "are not reflected throughout the records and are not

indicative of marked impairment."  Id. at 19.  She stated her evaluation of Dr. Old's

opinion of physical limitations:

> Other limitations that she was not able to work are not persuasive, as they
> are based entirely on subjective report and not supported by significant

findings or consistent with the record. Moreover, this is a determination reserved for the Commissioner. To the extent he opined that she could not sit or walk for prolonged periods, he did not define this restriction in vocational terms. Nevertheless the residual functional capacity includes a restriction to sitting for 6 hours in an 8-hour workday with normal breaks and to standing for 2 hours in an 8-hour workday with normal breaks based on evidence at the hearing level showing a forward leaning gait, unsteady Romberg, and that she walked slowly and hunched over.

(R. 19) (citations omitted). The ALJ stated she had "not provided articulation about the opinions from Dr. Old that are determinations reserved to the Commissioner and thus are inherently neither valuable nor persuasive in accordance with 20 CFR [§§] 404.1520b(c) and 416.920b(c)." Id.

The ALJ found Plaintiff unable to perform her past relevant work as a CNA or as a server but able to perform other work in the economy represented by occupations such as a document preparer, an optical goods assembler, and a table worker. Id. at 21.

## C.    Analysis

As a preliminary matter it is important to recognize that Plaintiff's argument throughout misapprehends the burden of proof in a Social Security disability case. At all times in such a case, it is the claimant's burden to prove that she is unable to perform her past relevant work. Blea, 466 F.3d at 907; Dikeman, 245 F.3d at 1184; Williams, 844 F.2d at 751 n.2. Only at step five of the sequential evaluation process does it become the Commissioner's burden to show that there are other jobs in the economy which are within the RFC assessed between steps three and four when the burden of proof is the claimant's. Id.; Haddock, 196 F.3d at 1088; see also, 20 C.F.R. §§ 404.1520(e), 416.920(e), 404.1545(a)(5), 416.945(a)(5).

Plaintiff's objection to the ALJ's finding, "There is no indication of use of any assistive device such as a cane, crutch, or wheelchair" (R. 16) is without merit.  As Plaintiff argues, in Kellams, the court stated "[t]he absence of evidence is not evidence." 696 F. App'x at 915.  However, here Plaintiff has the burden to prove the severity of pain resulting from her osteonecrosis and the ALJ relied on the lack of mention of any assistive device in the 735-page record as evidence tending to suggest Plaintiff's pain from her osteonecrosis was not as severe as she alleged.  To the extent Kellams may be suggesting it is error for an ALJ to rely on a claimant's failure to present evidence supporting her burden of proof, the court notes Kellams is an unpublished opinion which the court finds is not persuasive of such a proposition contrary to the burden of proof in a Social Security disability case.

The importance of the lack of use of an assistive device in the ALJ's view is emphasized by her finding, "Examination findings vary from normal gait to forward-leaning and one instance of antalgic gait."  (R. 13) (emphasis added).  The Merriam-Webster Dictionary provides the "medical definition of antalgic:"  "marked by or being an unnatural position or movement assumed by someone to minimize or alleviate pain or discomfort."  "Antalgic." Merriam-Webster.com Medical Dictionary, available online at, https://www.merriam-webster.com/medical/antalgic. (last visited: August 2, 2022).  The fact Plaintiff's physicians noted antalgic gait only one time in a 350-page medical record tends to support the ALJ's reliance upon no use of an assistive device to discount her allegations.  Moreover, the use of an assistive device such as a cane, a crutch, or a wheelchair would tend to remove weight from Plaintiff's knees and thereby reduce the

pain caused by her osteonecrosis.  Finally, the court notes the ALJ cited the record showing one instance of antalgic gait (R. 16, citing Ex. C4F at 7, R. 413) and Plaintiff cites no other record evidence showing antalgic gait.

As to Plaintiff's allegation the ALJ failed to explain why the MRI evidence of osteonecrosis, abnormal physical examination findings, and periodic abnormal gait were inconsistent with [her] allegations of disabling knee pain, that argument attempts to turn the burden of proof on its head.  It is Plaintiff's burden to prove inability to perform any substantial gainful activity.  In the context of her allegations, Plaintiff needs to provide evidence demonstrating her impairments are of disabling severity.  It is not the ALJ's duty to prove each allegation false.  Here, Plaintiff alleges disability beginning September 1, 2018.  The facts that MRIs in 2014, 2017, and 2018 showed degeneration from osteonecrosis remained stable since 2014 before Plaintiff alleges disability, and that only one medical record revealed an antalgic gait on examination suggest the pain from her osteonecrosis was not of disabling severity.  The ALJ's discussion of "decreased range of motion, decreased motor strength, and tenderness with palpation" as associated examination findings (R. 16) demonstrates that she was not picking and choosing favorable evidence wile ignoring less favorable evidence and Plaintiff does not point to evidence demonstrating these findings were so severe as to compel finding disabling pain.  Moreover, the ALJ explained her finding:

> Osteonecrosis reasonably limits the claimant to no more than 2 hours of walking and/or standing per 8-hour workday, no climbing of ladders, ropes, or scaffolds, no kneeling, no crawling, and no more than occasional balancing, crouching, and climbing of ramps or stairs.  This impairment

also contributes to the claimant's lifting limitations, and need to avoid more than occasional exposure to extreme cold, vibration, and hazards.

Id. The burden to prove disability is on Plaintiff. The ALJ explained her rationale and the inconsistencies in the record she relied upon to discount Plaintiff's allegations of disabling pain from osteonecrosis. The court's review of the ALJ's consideration is deferential and Plaintiff does not point to evidence compelling a contrary finding. As is almost always the case in a Social Security decision, the evidence is equivocal and can be read to support a finding of disability or of non-disability. It is the ALJ's duty to consider all the evidence and decide the issue. If the ALJ's rationale is supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion;" Perales, 402 U.S. at 389; the court may not reweigh the evidence and substitute its judgment for that of the ALJ.

This court's decision in Jamie N. does not require a different result. In Jamie N. the ALJ accepted the claimant's allegations of "multiple bowel movements on a daily basis, problems with food digestion, gastric bleeding despite surgery in November 2018, and occasional incontinence" but did not explain how he found multiple bowel movements and occasional incontinence would fit within the allowance for normal breaks approximately every two hours. 2021 WL 2454427 at *5. Because the claimant's allegations might be susceptible of being disabling or not disabling, it was necessary to explain why the ALJ found them not disabling. Id. at *5-6. Because he did not do so, the court found remand was necessary. Id. *6. Here, on the other hand, the ALJ explained she found Plaintiff's osteonecrosis pain was not disabling because her degeneration

remained stable since before she alleged disability, she did not use an assistive device, and she did not have an antalgic gait throughout the medical records.  These are reasons supported by the record evidence, and more is not required.

Plaintiff's argument that "Dr. Old's statements throughout the record also support [Plaintiff]'s allegations of disabling pain" (Pl. Br. 13) does not require a different result. Contrary to Plaintiff's argument, 20 C.F.R. §§ 404.1520c and 416.920c do not require the ALJ to "consider and weigh," and "evaluate the persuasiveness of all medical opinions and prior administrative findings," considering the factors of: (i) supportability, (ii) consistency, (iii) relationship with the claimant, (iv) specialization, and (v) other factors that tend to support or contradict the opinion or prior administrative finding.  Id. at 13-14.

An ALJ is required to consider all medical opinions and prior administrative medical findings in the record.  20 C.F.R. §§ 404.1520c, 416.920c.  The term "medical opinion" has a new definition in the new regulations:  "A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in the following abilities:" to perform physical, mental, or other demands of work; and to adapt to environmental conditions.  20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2).  "Prior administrative medical findings" is a term of art referring to the findings of state or federal agency physicians or psychologists about a medical issue at an earlier level of review.  20 C.F.R. §§ 404.1513(a)(5), 416.913(a)(5).  Although the term is broader in scope than a "medical opinion," id. at §§ 404.1513(a)(2), 416.913(a)(2) the terms are

often used interchangeably and the court will follow that practice in this case except when necessary to draw a distinction.

The regulations require that the agency "will <u>not</u> defer or give <u>any</u> specific evidentiary <u>weight</u>, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." <u>Id.</u> §§ 404.1520c(a), 416.920c(a) (emphases added).  Moreover, when the Commissioner promulgated the new rules regarding evaluation of medical evidence, she explained why she was no longer "weighing" medical opinions.

> To account for the changes in the way healthcare is currently delivered, we are adopting rules that focus more on the content of medical opinions <u>and less on weighing treating relationships</u> against each other. This approach is more consistent with current healthcare practice.

<u>Revisions to Rules Regarding the Evaluation of Medical Evidence</u>, 82 Fed. Reg. 5,844-01, 5,854, 2017 WL 168819 (SSA Jan. 18, 2017) (emphasis added).

> By moving away from assigning a specific weight to medical opinions, we are clarifying both how we use the terms "weigh" and "weight" in final 404.1520c(a), 404.1527, 416.920c(a), and 416.927 and also clarifying that adjudicators should focus on how persuasive they find medical opinions and prior administrative medical findings in final 404.1520c and 416.920c. Our intent in these rules is to make it clear that it is never appropriate under our rules to "credit-as-true" any medical opinion.

<u>Revisions to Rules Regarding the Evaluation of Medical Evidence</u>, 82 Fed. Reg. 5,844-01, 5,858.

> Courts reviewing claims under our current rules have focused more on whether we sufficiently articulated the weight we gave treating source opinions, rather than on whether substantial evidence supports our final decision.  As the Administrative Conference of the United States' (ACUS) Final Report explains, these courts, in reviewing final agency decisions, are

reweighing evidence instead of applying the substantial evidence standard of review, which is intended to be highly deferential standard [sic] to us.

Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 FR 5,844-01, 5,853.

Rather than relative weighing of medical opinions, the new regulations explain that the decision will articulate how persuasive the SSA finds all medical opinions and prior administrative medical findings. 20 C.F.R. §§ 404.1520c(b), 416.920c(b). The articulation requirement applies for each source, but not for each opinion of that source separately. 20 C.F.R. §§ 404.1520c(b)(1), 416.920c(b)(1). It requires that the SSA "will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision. We may, but are not required to, explain how we considered the factors in paragraphs (c)(3) through (c)(5) of this section, as appropriate, when we articulate how we consider medical opinions and prior administrative medical findings in your case record." 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

The evaluation required by the new regulations is precisely the evaluation the ALJ made of Dr. Old's opinions. Plaintiff does not allege error in discounting Dr. Old's opinions regarding mental impairments and the court does not address it here. The ALJ provided five reasons for finding Dr. Old's opinions regarding Plaintiff's physical limitations are not persuasive. 1. They are based entirely on her subjective report. 2. They are not supported by significant findings. 3. They are not consistent with the record. 4. The opinion Plaintiff is not able to work is a determination reserved for the

Commissioner.  5. The opinion Plaintiff cannot sit or walk for prolonged periods is not defined in vocational terms.

The only responses provided by Dr. Old on his "Medical Source Statement-Physical" were to indicate that the symptoms which cause a need for breaks for Plaintiff were pain, paresthesia, numbness, muscle weakness, and chronic fatigue.[4]  (R. 546). These are solely Plaintiff's report of symptoms, thus, as to this formal opinion it is based entirely on Plaintiff's subjective report.  This provides a clear evidentiary basis for the ALJ's finding as required by the Tenth Circuit in Langley, 373 F.3d at 1121; and Victory, 121 F. App'x. at 823–24.  This is not error.

Plaintiff's argument the ALJ erred in finding Dr. Old's opinion inconsistent with the record but failed to cite inconsistencies also fails.  As quoted above, the ALJ summarized the record evidence regarding osteonecrosis.  Supra, 11-12.  Moreover, she also summarized the evidence regarding lumbar and cervical spine degenerative disease, headaches, fibromyalgia, and chronic pain syndrome.  (R. 16-17).  In each of these summaries, the ALJ cited to the record evidence and noted evidence which was inconsistent with disabling limitations.  By way of example, as noted above the ALJ found the evidence regarding osteonecrosis was inconsistent with disabling limitations because MRI evidence concerning osteonecrosis remained stable since before Plaintiff

---

[4] It should be noted that Dr. Old did not check the block indicating Plaintiff needed additional breaks or answer the questions regarding how often or how long such breaks were needed.  (R. 546).  In Section I of the Statement, he indicated one should "see previous records" to obtain the responses to the background information in this section. Id. at 544.  His response to all other requests for information on the form was, "unknown."  Id. at 545-46.

alleges she became disabled, her medical providers found antalgic gait in only one instance, and there was no record evidence suggesting she needed an assistive device. Each of these inconsistencies is supported by citation to the record.  In her summary of each of the other conditions the ALJ also noted the evidence which was inconsistent with disabling limitations.  (R. 16-17).  These same inconsistencies are inconsistent with Dr. Old's opinion Plaintiff cannot work.

Further, Plaintiff does not allege error in the other three reasons given by the ALJ to discount Dr. Old's opinions regarding physical limitations and the court finds none.  In her Brief Plaintiff does not <u>cite</u> and the court does not find any record evidence supporting Dr. Old's opinion which would <u>compel</u> a different finding than that of the ALJ.

Giving the ALJ's evaluation of Plaintiff's allegation of symptoms the deference it is due, the court finds no error.

**IT IS THEREFORE ORDERED** that that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

Dated August 5, 2022, at Kansas City, Kansas.


<u>s/ John W. Lungstrum</u>
**John W. Lungstrum**
**United States District Judge**